UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT ASBURY and TERESA ASBURY,

Plaintiff,

v. Case No. 8:26-cv-641-VMC-CPT

BANDIT INDUSTRIES FLORIDA, INC.,
and SUNBELT RENTALS, INC.,

Defendants.

SUNBELT RENTALS, INC.,

Crossclaim Plaintiff/Defendant,

v.

BANDIT INDUSTRIES FLORIDA, INC.,

Crossclaim Defendant/Defendant.

SUNBELT RENTALS, INC.,

Counterclaim-Plaintiff,

v.

ROBERT ASBURY,

Counterclaim-Defendant.

SUNBELT RENTALS, INC.,

Third-Party Plaintiff,

v.

KALEIDOSCAPES, LLC,

Third-Party Defendant.
_______________________________/

**ORDER**

This matter is before the Court on consideration of Plaintiff/Counterclaim-Defendant Robert Asbury and Third-Party Defendant Kaleidoscapes, LLC's Motion to Dismiss Sunbelt Rentals, Inc.'s Counterclaim and Third-Party Complaint (Doc. # 66), filed on July 20, 2026. Defendant/Counterclaim-Plaintiff Sunbelt Rentals, Inc. responded on August 5, 2026. (Doc. # 67). The Motion is granted in part and denied in part.

## I. Background

This case arises from an unfortunate accident in which Robert Asbury lost his left leg in a stump grinder while on a landscaping job for his company, Kaleidoscapes, LLC. (Doc. # 27). Mr. Asbury is "the owner and manager of Kaleidoscapes, LLC," which "is a business that provides full-service lawn maintenance and complete landscaping solutions." (Id. at 9). Mr. Asbury and his wife, Teresa Asbury, bring multiple claims against the company that rented the stump grinder to him, Sunbelt Rentals, Inc., and the company that manufactured the stump grinder, Bandit Industries Florida, Inc. (Id. at 13-22). According to the amended complaint, both Bandit and Sunbelt defectively and negligently designed the stump

grinder and failed to warn Mr. Asbury about its dangers. (Id.).

As relevant here, Sunbelt Rentals has filed a counterclaim and third-party complaint against Mr. Asbury and Kaleidoscapes. (Doc. # 52). It asserts six claims: breach of contract/contractual indemnity against Mr. Asbury (Count I); common law/implied indemnity against Mr. Asbury (Count II); duty to defend and indemnify against Mr. Asbury (Count III); breach of contract/contractual indemnity against Kaleidoscapes (Count IV); common law/implied indemnity against Kaleidoscapes (Count V); and duty to defend and indemnify against Kaleidoscapes (Count VI). (Id.).

These claims are based on the agreements and forms Mr. Asbury signed when he rented the stump grinder from Sunbelt. Specifically, Mr. Asbury executed a rental contract with Sunbelt on January 6, 2025, in which Mr. Asbury allegedly agreed to indemnify and insure Sunbelt. (Id. at 2-4). The rental contract provided in relevant part:

> 8. RELEASE AND INDEMNIFICATION. TO THE FULLEST EXTENT PERMITTED BY LAW, **CUSTOMER INDEMNIFIES, RELEASES, HOLDS SUNBELT ENTITIES HARMLESS AND AT SUNBELT'S REQUEST, DEFENDS SUNBELT ENTITIES (WITH COUNSEL APPROVED BY SUNBELT), FROM AND AGAINST ALL LIABILITIES, CLAIMS, LOSSES, DAMAGES, AND EXPENSES (INCLUDING ATTORNEY'S AND/OR LEGAL FEES AND EXPENSES) HOWEVER ARISING OR INCURRED, RELATED TO ANY INCIDENT, DAMAGE TO PROPERTY, INJURY OR DEATH**

**OF ANY PERSON, CONTAMINATION OR ALLEGED CONTAMINATION, OR VIOLATION OF LAW OR REGULATION CAUSED BY OR CONNECTED WITH THE (a) ACCESS, USE, POSSESSION OR CONTROL OF THE EQUIPMENT BY CUSTOMER** OR ANY THIRD PARTY THAT CUSTOMER IMPLICITLY OR EXPLICITLY PERMITS TO ACCESS, USE, POSSESS OR CONTROL THE EQUIPMENT DURING THE RENTAL PERIOD OR (b) BREACH OF THIS CONTRACT, WHETHER OR NOT CAUSED IN PART BY THE ACTIVE OR PASSIVE NEGLIGENCE OR OTHER FAULT OF ANY PARTY INDEMNIFIED HEREIN AND ANY OF THE FOREGOING ARISING OR IMPOSED IN ACCORDANCE WITH THE DOCTRINE OF STRICT OR ABSOLUTE LIABILITY. CUSTOMER ALSO AGREES TO WAIVE ITS WORKERS' COMPENSATION IMMUNITY, TO THE EXTENT APPLICABLE. CUSTOMER'S INDEMNITY OBLIGATIONS SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS CONTRACT. All of Customer's indemnification obligations under this paragraph shall be joint and several.

9. INSURANCE. **During the Rental Period, Customer shall maintain, at its own expense, the following minimum insurance coverage: (a) for Customers using Equipment for non-personal use, general liability insurance of not less than $1,000,000 per occurrence, including coverage for Customer's contractual liabilities herein such as the release and indemnification clause contained in Section 8;** (b) for Customers using Equipment for non-personal use, property insurance against FMV thereof, unless RPP is elected at the time of rental and paid for prior to any Incident; (c) worker's compensation insurance as required by law; and (d) automobile liability insurance (including comprehensive and collision coverage, and uninsured/underinsured motorist coverage), in the same amounts set forth in subsections (a) and (b), if the Equipment is to be used on any roadway. Such policies shall be primary, non-contributory, on an occurrence basis, contain a waiver of subrogation, name Sunbelt and its agents as an additional insured (including an additional insured endorsement) and loss payee, and provide for Sunbelt to receive at least 30 days prior written notice of any cancellation or material change. Any insurance that excludes boom damage or overturns is a breach. Customer shall

> provide Sunbelt with certificates of insurance [] evidencing the coverages required above prior to any rental and any time upon Sunbelt's request. To the extent Sunbelt Entities carry any insurance, Sunbelt Entities' insurance will be considered excess insurance. The insurance required herein does not relieve Customer of its responsibilities, indemnification, or other obligations provided herein, or for which Customer may be liable by law or otherwise.

(Doc. # 52-1 at 3) (emphasis added).

"Furthermore, [Mr. Asbury] and/or [Kaleidoscapes] agreed to accept the terms and conditions when [Mr. Asbury] completed the Application for Credit & Rental Agreement, online prior to the subject rental." (Doc. # 52 at 4; Doc. # 52-2). Mr. Asbury "also signed the Individual Person Guarantee on the Application for Credit and Rental Agreement." (Doc. # 52 at 5; Doc. # 53-3). Yet, "both [Mr. Asbury] and [Kaleidoscapes] have failed to abide by the terms of these agreements." (Doc. # 52 at 5).

Now, Mr. Asbury and Kaleidoscapes move to dismiss the counterclaim and third-party complaint. (Doc. # 66). Sunbelt Rentals has responded (Doc. # 67), and the Motion is ripe for review.

## II. <u>Legal Standard</u>

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the

allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544.

## III. Analysis

### A. Counts I and IV

In Counts I and IV, Sunbelt asserts claims for breach of contract/contractual indemnity against Mr. Asbury and Kaleidoscapes.[1] (Doc. # 52 at 5-6, 8-9). "As the direct and proximate result of [Mr. Asbury's and Kaleidoscapes'] failure to insure and indemnify, [Sunbelt] has incurred and will continue to incur attorneys' fees and costs and expenses, and [Sunbelt] will suffer direct and consequential damages in an amount not yet known, . . . and is entitled to recover same from" Mr. Asbury and Kaleidoscapes. (Id.).

Under Florida law, the "elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." Abbott Lab'ys, Inc. v. Gen. Elec. Cap., 765 So. 2d 737, 740 (Fla. 5th DCA 2000). Mr. Asbury and Kaleidoscapes

[1] The rental agreement states that the contract, "including any related tort claims, shall be governed by the laws of South Carolina, without regard to any conflicts of law principles." (Doc. # 52-1 at 3). Notably, both parties have only cited Florida law in their briefing. (Doc. ## 66, 67). "[A] party waives its opportunity to rely on non-forum law where it fails to timely provide — typically in its complaint or the first motion or response when choice-of-law matters — the sources of non-forum law on which it seeks to rely." Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1208 (11th Cir. 2018). For purposes of this Motion, the Court will assume that Sunbelt has waived the chance to rely on South Carolina law and will instead analyze the claims under Florida law.

argue this claim must be dismissed because Sunbelt has failed to plausibly allege the damages element. According to them, the counterclaim/third-party complaint "contains no factual allegations from which the Court can reasonably infer that the insurance [Mr.] Asbury allegedly was required to procure would have afforded Sunbelt either a defense or indemnity for the claims asserted in the underlying action." (Doc. # 66 at 5).

The Motion is denied as to this argument. "The measure of damages in a negligent procurement of insurance case is what would have been covered had the insurance been properly obtained." Capell v. Gamble, 733 So. 2d 534, 535 (Fla. 1st DCA 1998). For the pleading stage, the counterclaim/third-party complaint plausibly alleges that the insurance Mr. Asbury and Kaleidoscapes were required to obtain would have covered the accident in which Mr. Asbury was injured. The terms of the rental agreement require insurance coverage for the commercial use of the rented stump grinder and also specify that Mr. Asbury and Kaleidoscapes would indemnify and defend Sunbelt for all liabilities, claims, or damages "related to any . . . injury or death of any person, . . . caused by or connected with the (a) access, use, possession or control of the equipment by Customer." (Doc. # 52-1 at 3).

This broad provision supports that the insurance coverage that should have been procured would have covered the injury to Mr. Asbury caused by the rented stump grinder.

Mr. Asbury and Kaleidoscapes also argue this claim (along with the other claims against Kaleidoscapes) should be dismissed as to Kaleidoscapes. According to them, the counterclaim/third-party complaint "alleges no facts establishing that Kaleidoscapes ever became a party to any agreement with Sunbelt or otherwise became bound by the contractual obligations upon which those claims depend." (Doc. # 66 at 11).

The Court rejects this argument as to all claims against Kaleidoscapes. True, Kaleidoscapes is not an explicit signatory on the agreements. Still, "[u]nder Florida law, disclosed [principals] are considered to be parties to contracts entered into by their agents, acting with authority." 727 Randolph St., LLC v. Comer, No. 17CV80-MW/CAS, 2019 WL 12288347, at *3 (N.D. Fla. July 10, 2019); see also Babul v. Golden Fuel, Inc., 990 So. 2d 680, 683 (Fla. 2d DCA 2008) ("[A]n agent acting within the course and scope of its agency relationship with a disclosed principal is not liable for the debts or obligations of the principal arising from contracts which the agent may negotiate or execute on

behalf of such disclosed principal." (citation omitted)). "[I]f the contracting party knows the identity of the principal for whom the agent purports to act, the principal is deemed to be disclosed. A dispute concerning the contracting party's knowledge of the identity of the principal for whom the agent claims to act presents an issue of fact." Babul, 990 So. 2d at 683-84 (citations and internal quotation marks omitted).

Taking the allegations in the light most favorable to Sunbelt, the counterclaim/third-party complaint plausibly alleges that Mr. Asbury signed the agreements as an agent of Kaleidoscapes. See WP Prop. Holdings I, LLC v. JR&Co., No. 2:24-cv-778-KCD-NPM, 2025 WL 3759228, at *2 (M.D. Fla. Dec. 30, 2025) ("JR&Co alleges that Westpoint signed the contract as an agent for WP Property. That is sufficient to state a claim [against WP Property]."). As alleged in both the amended complaint and Sunbelt's counterclaim/third-party complaint, Mr. Asbury is "the owner and manager of Kaleidoscapes," which is a lawncare business. (Doc. # 52 at 2). Additionally, Mr. Asbury "entered into a rental agreement with [Sunbelt] to acquire the subject stump grinder for use on 'the Kaleidoscapes, LLC project.'" (Id.).

Thus, Counts I and IV survive the pleading stage. Mr. Asbury and Kaleidoscapes may raise these issues again at summary judgment.

**B. Counts II and V**

In Counts II and V, Sunbelt asserts, "in the alternative" to Counts I and IV, claims based on "the common-law theory of implied contract and implied indemnification" against Mr. Asbury and Kaleidoscapes. (Doc. # 52 at 6, 9).

Mr. Asbury and Kaleidoscapes move to dismiss these claims for two reasons. First, to the extent these claims are based on an implied contract, they insist that "Florida law does not recognize an implied contract concerning a subject already governed by an express contract." (Doc. # 66 at 7). Second, as to the common-law indemnity aspect of these claims, Mr. Asbury and Kaleidoscapes argue that the underlying amended complaint's allegations "foreclose Sunbelt's claim," with Sunbelt's liability for Mr. Asbury's claims "aris[ing] from Sunbelt's own alleged conduct or its own legal responsibility for the product, not from liability imposed solely because of [Mr.] Asbury's or Kaleidoscapes' conduct." (Id. at 8). The Court agrees.

Notably, Sunbelt does not argue that it has sufficiently pled these claims under the theory of "implied contract."

(Doc. # 67). Instead, Sunbelt merely argues that these counts are claims "for common law indemnity" (Id. at 9-10), which leads the Court to conclude Sunbelt was merely using "implied contract" as a description of the "common-law indemnity" claim rather than as a separate claim. Thus, Sunbelt has abandoned any argument that Counts II and V plausibly allege a claim for implied contract (rather than common-law indemnity). See Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); Barnes v. AstraZeneca Pharms. LP, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("When an argument is raised upon [a] motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal." (citation omitted)). Counts II and V are dismissed as to the implied contract theory.

Next, Counts II and V are dismissed as to the common-law indemnity theory. "Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other and is allowable only where the Whole fault is in the one against whom indemnity is sought." Houdaille Indus., Inc. v.

Edwards, 374 So. 2d 490, 492–93 (Fla. 1979). Indemnity "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." Id. at 493. In short, "[i]n order for a common law indemnity claim to stand, a two-pronged test must be satisfied: (1) the indemnitee must be faultless and (2) the indemnitee's liability must be solely vicarious for the wrongdoing of another." Zeiger Crane Rentals, Inc. v. Double A Indus., Inc., 16 So. 3d 907, 911 (Fla. 4th DCA 2009).

Regardless of whether the facts alleged in the underlying amended complaint are true, Sunbelt's liability for those claims against it hinges upon its own fault — not Mr. Asbury's or Kaleidoscapes' fault. See (Doc. # 27 at 13-22) (basing claims against Sunbelt on Sunbelt's alleged defective and negligent design and failure to warn). Thus, if Sunbelt is held liable on those claims, that liability will be based on Sunbelt's own wrongdoing. If Sunbelt is found not to be at fault (with only Mr. Asbury or Kaleidoscapes at fault for the accident), there will be no judgment against Sunbelt to indemnify. Common-law indemnity for such claims is

therefore unavailable to Sunbelt. See Houdaille Indus., Inc., 374 So. 2d at 493 ("Florida Wire's claim that Houdaille's negligence solely and proximately caused the injury to the deceased employee does not establish a claim for indemnity since, if this is the case, a judgment cannot properly be awarded against Florida Wire in favor of the plaintiff since Florida Wire cannot be held vicariously or constructively liable for Houdaille's acts."); Zeiger Crane Rentals, Inc., 16 So. 3d at 911–12 ("[I]t is a legal impossibility for a gross negligence claim under section 440.10(1)(e), Florida Statutes and a common law indemnity claim to be simultaneously successful because each claim requires proof of fault that cannot co-exist with the other claim's requirement. If a plaintiff is able to prove that the same-project subcontractor's *own* gross negligence is the major contributing cause of his injury, then the subcontractor's direct fault will preclude its recovery in the common law indemnity claim. Conversely, if the subcontractor is able to prove that a third-party is wholly at fault for the plaintiff's injury, thus satisfying the requirement for common law indemnity, the plaintiff will not succeed in his claim under section 440.10(1)(e), Florida Statutes because

the subcontractor's *own* gross negligence is not the major contributing cause of his injury." (citation omitted)).

Counts II and V are dismissed in their entirety without prejudice.

**C. <u>Count III</u>**

In Count III, Sunbelt asserts a claim against Mr. Asbury for failure "to procure general liability insurance that named [Sunbelt] as an additional insured" and for failure to "defend and indemnify [Sunbelt] from the claims asserted by [Mr. and Mrs. Asbury] in this action." (Doc. # 52 at 7).

Mr. Asbury and Kaleidoscapes argue this claim is duplicative of the breach of contract claim in Count I. According to them, "[b]oth counts are predicated upon the same agreements, same operative facts, the same alleged contractual obligations, and the same claimed damages" and the counterclaim/third-party complaint "identifies no separate contractual undertaking or distinct breach alleged in Count III that is not already encompassed within Count I." (Doc. # 66 at 9-10).

The Motion is denied. While the counterclaim/third-party complaint could have been pled more clearly, Count III specifically invokes the duty to defend, which is not explicitly invoked in Count I. (Doc. # 52 at 5-7). As Sunbelt

explains, "Count III, while similar to Count I, makes a claim for breach of contract based on the Movant's failure to provide a defense to Sunbelt, which is distinct from Count I's claim for breach of contract based on [Mr.] Asbury's failure to indemnify and insure Sunbelt against claims made related to use of the subject grinder." (Doc. # 67 at 10). Indeed, the "duty to defend is entirely separate from the duty to indemnify." Eckerd Youth Alternatives, Inc. v. Devereux Found., Inc., 366 So. 3d 1154, 1158 (Fla. 2d DCA 2023). Thus, this claim is not duplicative to the extent it is based on the duty to defend. The Court will not dismiss this claim.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiff/Counterclaim-Defendant Robert Asbury and Third-Party Defendant Kaleidoscapes, LLC's Motion to Dismiss Sunbelt Rentals, Inc.'s Counterclaim and Third-Party Complaint (Doc. # 66) is **GRANTED** in part and **DENIED** in part.

(2) Counts II and V are dismissed. If Sunbelt wishes to amend these claims, it must file a motion to amend with its proposed amended counterclaim/third-party complaint attached.

(3) Answer to the remaining claims due within 14 days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of August, 2026.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE